IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| CLAY LABORDE #1682743 | § | |
| v. | § | CIVIL ACTION NO. 6:10cv156 |
| DAN LOWE, ET AL. | § | |

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Clay Laborde, a former inmate of the Van Zandt County Jail proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in the proceedings, pursuant to 28 U.S.C. 636(c). As Defendants, Laborde named Nurse Dan Lowe, a nurse whom he identified as Lindsay, and jail administrator George Flowers. The evidence shows that Nurse Lindsay's full name is Lindsay Brignac.

At an evidentiary hearing and in his complaint, Laborde says that he went into the Van Zandt County Jail on August 29, 2009. He was unable to bring his medications with him and so he let the medical staff know that he did not have any. Laborde stated that he took six blood pressure pills per day, but he did not get any medications for two to three weeks after his incarceration. He noted that he had been in the jail a few years earlier, in 2006, with exactly the same medications as he was taking in 2009.

Laborde said he told jail personnel the name of his doctor in Fort Worth, and the jail looked it up but got it wrong; his doctor was Jo Anne King but the jail contacted a doctor named Delores King. They told Laborde that Dr. King had not heard of him, and he tried to explain that it was a different Dr. King.

Laborde stated that he became concerned over the lack of medication and began filing grievances. He began receiving one medication per day, over a period of several months, which he

1

thought was putting his life at risk. He noted that he had been on several different types of medication since 2004, including diltiazem, atenolol, and lisinipril. However, the jail staff gave him clonidine instead.

According to Laborde, clonidine is a "quick fix" and is not supposed to be taken over the long term. He attaches a chart to his complaint showing that in September of 2009, he received 30 mg of nexium and 20 mg of lisinipril, once a day, and in October, the lisinipril was increased to 40 mg per day. In November, he began receiving lisinipril twice a day, 40 mg in the morning and 20 in the evening, as well as one aspirin once a day. In December, he began receiving 25 mg of atenolol in addition to what he already had. In January, his evening dose of lisinipril was increased to 40 mg and he began receiving 600 mg of ibuprofen twice a day, In February, the lisinipril and ibuprofen were discontinued, and Laborde began receiving diltiazem and lexapro. By contrast, Laborde said, prior to his entering the jail, he was taking diltiazem, antenolol, enalapril, amitriptylene, nexium, potassium, and HCT.

Laborde explained that he sued Lowe, the nurse practitioner, because Lowe knew about the jail archives, which matched everything he said. Laborde said that "it's not about health care, it's about saving money for the county." He added that Lowe told him "if you keep coming to jail, you're going to die." He started that Nurse Brignac should have known better and that she called Laborde's doctor one time, and then never called back when there was no answer. Laborde contended that there was a lack of diligence in checking his file, and then in covering it up; he speculated that the jail personnel did find his old records but simply ignored them because following them would have been too expensive.

The third defendant in the lawsuit is jail administrator George Flowers. Laborde testified that he sued Flowers because he was Lindsay's boss and is "in charge of the situation." Laborde again complained that it took him 10 months to get medications. Laborde noted that he was showing blood pressure readings like 188/117, which he said was out of the ordinary, but nothing was done. Finally, in June of 2010, he saw Dr. Daly, and received additional medications.

On cross-examination, Laborde testified that he first saw Lowe on September 2, 2009. At this time, he received prescriptions for four medications, but only one of these was for blood pressure. Laborde stated that Lowe came to the jail once a week, and that between September of 2009 and July of 2010, he saw Lowe over 20 times, with a number of complaints including blood pressure, headaches, athlete's foot, and injuries from a fight.

Over the course of these months, Laborde acknowledged that Lowe prescribed a number of different medications, including lisinipril, enalipril, nexium, clonidine, and atenolol, and, later, diltiazem, laxipril, cipro, dulcolax, and fibercon.[1]

On December 4, 2009, Laborde stated that he was in an altercation, and was taken to the emergency room by ambulance and treated for a head injury. He was stitched up and given medication, but no additional blood pressure medication was provided. Laborde explained that he was not there for high blood pressure, but for the injuries from the altercation. He also said that Lowe "finally" referred him to an outside clinic.

Laborde explained on cross-examination that his complaint against Nurse Brignac was that she did not order his medical records. He acknowledged that she did not prescribe medications, but again complained that she did not try again to get in touch with his doctor after she called the wrong Dr. King.

## The Jail Records

Laborde's Van Zandt County jail records show that he was arrested on August 30, 2009. A grievance response from Flowers, dated December 15, 2009, says that Laborde had been seen by the nurse practitioner, Lowe, on September 3, September 17, October 15, October 29, November 5, November 12, November 19, and December 10, and that he was currently prescribed lisinipril, nexium, antenolol, aspirin, and clonidine. Another grievance response from Flowers, dated

---

[1] According to the U.S. National Library of Medicine at the National Institutes of Health, lisinipril, enalapril, clonidine, atenolol, and diltiazem are for high blood pressure, nexium is for acid reflux, lexapro is an antidepressant, cipro is an antibiotic, and dulcolax and fibercon are laxatives. *See* http://www.nlm.nih.gov.

December 11, notes that Laborde was treated at the local hospital on December 4. Laborde filed a large number of grievances concerning his medical care, to which the answer generally was that the medical staff reported that he was receiving proper treatment.

A list of inmate medications in the jail records (Vol, I, p. 204) generally agrees with Laborde's recitations of the medications he received. On September 3, 2009, he was given prescriptions for lisinipril and nexium, and on October 15, clonidine, aspirin, and atenolol were added. On February 4, 2010, he was given a prescription for lexapro, and than on March 4, he received claritin. On March 11, he received a prescription for diltiazem and ceclor, which is an antibiotic, and then lisinipril was renewed on April 1. On April 15 and April 29, he received a prescription for docusate calcium, and fibercom on April 29. On May 20, Laborde received a prescription for atenolol and lisinipril, and he got prescriptions for aspirin and ibuprofen on June 3, 2010.

Laborde also complained that the jail staff contacted the wrong Dr. King, indicating that he believed that this was done with deliberate indifference to his medical needs. He testified that he tried to tell the jail staff that it was Dr. Jo Anne King and not Dr. Delores King, but to no avail.

However, on September 22, 2009, Laborde submitted a medical request which reads as follows:

> [Reason for Request:] For bottom bunk restriction, extra mat due to back surgery, scar L-4 - L-5 section. Dr. Deloris King M.D., Records Department at VMP Medical Center - Viola M. Pitts Bryant Irving Rd. Fort Worth TX.

Jail Records, vol. I, p. 349. The response to this request that the doctor's office was sending over a release for Laborde to sign, after which the records would be released. Underneath this response is a note saying "received call back from doctor's office stating he is not a patient."

On September 28, 2009, Nurse Brignac made an entry in the medical records saying that Laborde had put in a formal request for the medical staff to retrieve medical records from a Dr. Delores King. She put in a call to Dr. King's office and was told that they would send over a request

4

form. The next day, Nurse Brignac wrote that she had spoken to Laura at Dr. King's office and was told that they were waiting for a request form to be sent from the medical department.

On October 1, 2009, Nurse Brignac wrote that she spoke again to Laura from Dr. King's office, and was told that Laborde had never been a patient of Dr. King's and so there were no medical records. That same day, Nurse Brignac sent a request for Laborde's medical records to John Peter Smith Hospital in Fort Worth.

The next day, a nurse's aide talked to Laborde about his medical records. She told him that she had spoken to Dr. King personally on the phone and that Dr. King said that she had never seen Laborde and that her office had no record of him. She quotes Laborde as replying "now Amy, has anyone reported anything here if they have done something wrong?" She told him that she would not have known of anything like that and that they had done "everything under the sun" to get his medical records and there is nothing more that they can do. She then asked Laborde if had any of his medications at home, and he said that they were in his truck, but the officer said that he could not have them and that the jail would get his medications for him.

Legal Standards and Analysis

Laborde's primary complaint is that the jail staff was deliberately indifferent to his serious medical needs. He says that he was regularly given less medication than he had been receiving prior to his incarceration, and that as a result, his blood pressure was continuously high. Consequently, Laborde states that he suffered extreme chest pain, dizziness, fatigue, headaches, blurred vision, "seeing silver spots and stars," pounding temples, pressure in his ears, pain in his left arm and leg, and a burning sensation in his scalp.

The Fifth Circuit has held that deliberate indifference to a convicted inmate's serious medical needs could state a civil rights violation, but a showing of nothing more than negligence does not. Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997); Jackson v. Cain, 864 F.2d 1235, 1246 (5th Cir. 1989). However, simple disagreement with the medical treatment received or a complaint that the treatment received has been unsuccessful is insufficient to set forth a

constitutional violation. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985); Norton, 122 F.3d at 293.

Furthermore, malpractice alone is not grounds for a constitutional claim. Varnado v. Collins, 920 F.2d 320, 321 (5th Cir. 1991). Negligent or mistaken medical treatment or judgment does not implicate the Eighth Amendment and does not provide the basis for a civil rights action. Graves v. Hampton, 1 F.3d 315, 319-20 (5th Cir. 1993). The Fifth Circuit has held that the fact that medical care given is not the best that money can buy, and the fact that a dose of medication may occasionally be forgotten, does not amount to deliberate indifference to serious medical needs. Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).

More pertinently, the Fifth Circuit has held that an inmate who had been examined by medical personnel on numerous occasions failed to set forth a valid showing of deliberate indifference to serious medical needs. Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). It should be noted in this regard that medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference to serious medical needs. Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995).

In Domino v. TDCJ-ID, 239 F.3d 752 (5th Cir. 2001), a inmate who was a psychiatric patient expressed suicidal ideations and the psychiatrist returned him to his cell after a five-minute examination; the inmate committed suicide two and a half hours later. The Fifth Circuit, in reversing a denial of summary judgment by the district court, stated as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Id. Furthermore, the decision whether to provide additional medical treatment "is a classic example of a matter for medical judgment." Estelle v. Gamble, 429 U.S. 97, 107 (1972). And, "the failure to alleviate a significant risk that [the official] should have perceived, but did not," is insufficient to show deliberate indifference. Farmer v. Brennan, 511 U.S. 825, 838 (1994).

Domino, 239 F.3d at 756; *see also* Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In this case, the records reflect that the jail medical staff saw Laborde virtually every week. He was prescribed numerous medications, in various different combinations, in an effort to address his complaints. Laborde's pleadings and testimony wholly fail to show that the Defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." The fact that Laborde did not receive the medications that he wanted, in the quantities that he believed appropriate, is not proof of deliberate indifference to his serious medical needs. Nor does the fact that the treatment was not as successful as Laborde would have liked amount to deliberate indifference. Even if the jail medical staff was negligent or mistaken by not providing medications in the dosages that Laborde said were appropriate, the Fifth Circuit has stated that negligent or mistaken medical treatment or judgment is not deliberate indifference. Graves, 1 F.3d at 320; *see also* Fenlon v. Quarterman, 350 Fed.Appx. 931, 2009 WL 3444778 (5th Cir., October 26, 2009) (prisoner incorrectly told by prison officials that a growth on his neck was not cancerous, when in fact it was; the district court dismissed the lawsuit as frivolous, and the Fifth Circuit affirmed this dismissal, citing Domino). Laborde's own pleadings, replete with charts showing the medications he received and the results of his blood pressure checks, belie his claim of deliberate indifference. His claim on this point is without merit.

Similarly, Laborde complains that he could not always get his blood pressure checked when he wanted it done, but he furnishes a list of blood pressure readings, showing that checks were done over 120 times between December 6, 2009, and February 18, 2010. He refers to an incident in which he had a spot on his face which was "an inch wide with infection boiling over"; the medical records show that he was seen in the clinic on December 31 for an ingrown hair follicle on his chin, and it was opened, drained, and dressed with antibiotic ointment. No deliberate indifference has been shown.

Laborde also argues that Nurse Brignac was deliberately indifferent to his needs by failing to obtain copies of his medical records. He points to the fact that the jail staff contacted the

wrong Dr. King; however, the jail records show that it was Laborde himself who identified his doctor as "Delores King." The jail staff promptly contacted Dr. King, but when they did, they were informed that Dr. Delores King had never seen Laborde and had no records for him. Laborde has failed to show that the defendants were deliberately indifferent to him in this regard; they acted upon the information which he gave them. Although Laborde said that Nurse Brignac called once and then did not call back, the records show that in fact the jail staff called multiple times, and the nurse's aide spoke to Dr. King personally. This contention is without merit.

Nor has Laborde shown any basis for deliberate indifference in his claim that Lowe did not research the jail record's archives to determine what medications Laborde had taken during a previous incarceration several years earlier. Even if this failure was negligent, a dubious premise in and of itself, Lowe was not deliberately indifferent in basing his treatment decisions on current observations rather than archived records. Similarly, Lowe's statement that Laborde would die if he kept returning to jail was not deliberately indifferent to Laborde's safety, nor otherwise a constitutional violation. The Fifth Circuit has stated that "mere threatening language and gestures" of a custodial officer do not, even if true, amount to constitutional violations. Bender v. Brumley, 1 F.3d 271, 274 n.3 (5th Cir. 1993); McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983). In this case, it is not even clear that Lowe's statement was a threat; a reasonable interpretation of the remark is that jail is an unhealthy place for a person suffering from chronic high blood pressure, and that Laborde was putting himself at risk by running afoul of the law. Laborde's claim on this point is without merit.

Laborde says in his complaint that Nurse Brignac "failed to blow the whistle on medical malice" to Flowers, the Texas Board of Medical Examiners, and the Texas Jail Standards Commission." Laborde has failed to show that any violations occurred which Nurse Brignac should have reported. Even if such violations did occur, Laborde has not shown that a federal constitutional duty existed to make such a report, whether or not Nurse Brignac had a duty under the terms of her state-issued nursing license to do so. The Fifth Circuit has stated that in order to maintain a claim

under Section 1983, a plaintiff must show that he has been deprived of a right secured by the Constitution, laws, or treaties of the United States by a person acting under color of state law. Daniel v. Ferguson, 839 F.2d 1124, 1126 (5th Cir. 1988). Laborde has not shown that the failure on the part of a jail nurse to report violations of proper medical practice to state agencies amounts to a constitutional violation. This claim is without merit.

Finally, Laborde sues jail administrator George Flowers, saying that Flowers was Nurse Brignac's boss and that he "had to know." He stated that Flowers was "in charge of the situation."

The Fifth Circuit has held that lawsuits against supervisory personnel based on their positions of authority are claims of liability under the doctrine of *respondeat superior*, which does not generally apply in Section 1983 cases. Williams v. Luna, 909 F.2d 121, 123 (5th Cir. 1990). A supervisor may be held liable if there is personal involvement in a constitutional deprivation, a causal connection between the supervisor's wrongful conduct and a constitutional deprivation, or if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind a constitutional deprivation. Thompkins v. Belt, 828 F.2d 298, 300-301 (5th Cir. 1987).

In this case, Laborde has not shown that Flowers was personally involved in a constitutional deprivation, that a causal connection exists between wrongful conduct by Flowers and a constitutional deprivation, or that Flowers implemented a constitutionally deficient policy which was the moving force behind a constitutional deprivation. In fact, he has not shown that a constitutional violation occurred at all. The Fifth Circuit has explained that absent primary liability, there can be no supervisory liability. Gibbs v. King, 779 F.2d 1040, 1046 n.6 (5th Cir.), *cert. denied* 476 U.S. 1117 (1986). To the extent that Laborde sues Flowers in his role as a supervisor, the claim is without merit.

Laborde also asserts in his complaint that Flowers is "ignoring his grievances" and "making up erroneous grievance replies." The jail records contain dozens of medical requests,

inmate request forms, and grievances from Laborde, all of which contain replies. The Fifth Circuit has held that inmates do not have a constitutionally protected liberty interest in having grievances resolved to their satisfaction, and so there is no violation of due process when prison officials fail to do so. Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005); *see also* Edmond v. Martin, et al., slip op. no. 95-60666 (5th Cir., Oct. 2, 1996) (unpublished) (prisoner's claim that a defendant "failed to investigate and denied his grievance" raises no constitutional issue); Thomas v. Lensing, et al., slip op. no. 01-30658 (5th Cir., Dec. 11, 2001) (unpublished) (same). Laborde's claim on this point is without merit.

Finally, Laborde contends that Flowers has been "tampering with his certified legal mail." He explains that he has written to the ACLU and to the Dailey Medical Center, but has heard nothing. Laborde speculates that jail personnel confiscated these letters as "a game consisting of retaliation."

The fact that Laborde did not receive a response to his letters does not show that his letters were not mailed or that the mail was otherwise tampered with. *See* Sullivan v. DeRamcy, civil action no. 5:08cv168, 2010 WL 2331181 (E.D.Tex., May 1, 2010) (no merit to claims of mail tampering based on the reasoning that if a prisoner does not receive a response, his letter must not have been mailed), *citing* Mitchell v. Askelson, civil action no. C08-980-MJP-MAT, 2009 WL 2067044 (W.D.Wash., September 18, 2009) (speculation that mail was tampered with because no response was received is not evidence and cannot defeat summary judgment). This claim is without merit.

Although Laborde makes a passing reference to retaliation, he has wholly failed to establish the elements of a retaliation claim. The Fifth Circuit has explained that a prisoner who asserts a retaliation claim must assert specific facts; mere conclusory allegations are not enough. Whittington v. Lynaugh, 842 F.2d 818, 820 (5th Cir. 1988). Moody v. Baker, 857 F.2d 256, 258 (5th Cir. 1988). The elements of a claim under a theory of retaliation are the invocation of a specific constitutional right, the defendant's intent to retaliate against the plaintiff for his exercise of that

right, a retaliatory adverse act, and causation, which is a showing that but for the retaliatory motive, the action complained of would not have occurred. Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997). This requirement places a heavy burden upon inmates, because mere conclusionary allegations will not suffice; instead, the inmate must produce direct evidence of retaliation or, the more probable scenario, a chronology of events from which retaliation may plausibly be inferred. Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995). The relevant showing must be more than the prisoner's personal belief that he is the victim of retaliation. Johnson, 110 F.3d at 310, *citing* Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995).

In this case, Laborde has not pointed to a retaliatory adverse act, inasmuch as his complaint of mail tampering is wholly speculative. Nor has he shown that but for the alleged retaliatory motive, the supposed actions of which he complains would not have occurred. To the extent that Laborde raises a retaliation claim, this claim is without merit as well.

## Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Neitzke v. Williams, 490 at 327, *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Laborde's complaint lacks any arguable basis in law and fails to state a claim upon which relief may be granted. Consequently, the lawsuit may be dismissed under 28 U.S.C. §1915A(b). *See generally* Thompson v. Patteson, 985 F.2d 202, 204 (5th Cir. 1993). It is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice as frivolous and for failure to state a claim upon which relief may be granted. 28 U.S.C. §1915A. It is further

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED. Finally, it is

ORDERED that the Clerk shall send a copy of this opinion to the Administrator of the Three Strikes List for the Eastern District of Texas.

**So ORDERED and SIGNED this 31st day of January, 2011.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE